Floyd WILSON, Jr.

v.

Ernest S. PATTON, et al.

Civ. A. No. 82–0786.

United States District Court,
E. D. Pennsylvania.

June 30, 1982.

---

Floyd Wilson, Jr., pro se.

Vram Nedurian, Jr., Asst. Dist. Atty., Media, Pa., for respondents.

## MEMORANDUM

POLLAK, District Judge.

Floyd Wilson, an inmate at Camp Hill Correctional Institution, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Wilson's petition challenged on double jeopardy grounds a conviction for robbery and other charges obtained in a retrial conducted after his first trial was terminated *sua sponte* by the trial judge, over Mr. Wilson's objection, when a prosecution witness inadvertently gave prejudicial testimony. The petition

was referred to a Magistrate. Now before this court is the Magistrate's Report and Recommendation sustaining Mr. Wilson's constitutional claims and proposing that habeas corpus be granted. Respondents—the Superintendent of Camp Hill Correctional Institution and the Attorney General of Pennsylvania—have filed objections to the Report and Recommendation.[1]

I conclude that habeas corpus should be denied. In my judgment, the Magistrate's very careful canvass of the state trial record subjects the trial court's decision to declare a mistrial to a stricter level of scrutiny than is warranted under the Supreme Court's most recent examination of this issue. *See Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Since I have decided not to adopt the Report and Recommendation, a full explanation of my decision is in order.

### I.

The narrative begins with the indictment of Mr. Wilson on charges of robbery, aggravated assault, recklessly endangering another, commission of a crime with a firearm and conspiracy. The indictment charged that Mr. Wilson, in concert with a co-defendant, had robbed a pharmacy on the evening of March 19, 1975. Petitioner's trial was commenced before a jury in March, 1976, in the Delaware County Court of Common Pleas with Judge John Diggins presiding. During the course of that trial, the robbery victim, testifying as a witness for the prosecution, referred to "mug shots" of the defendants which had been shown to him by police. Both petitioner and respondent agree that the witness's reference to "mug shots" was inadvertent and in no way attributable to the prosecutor. Following this remark, counsel for Mr. Wilson and counsel for his co-defendant both moved for a mistrial. During a conference in chambers, the co-defendant's motion was granted. The following colloquy ensued:

---

1. Although Mr. Wilson proceeded *pro se,* and respondents were represented by counsel, Mr. Wilson was not over-matched. Mr. Wilson's submissions in this case constituted effective advocacy, but the same cannot be said of the opposing submissions. This court's analysis of the complex double jeopardy issues posed by this case was not aided by anything filed on respondents' behalf; so far as this court can tell from a view of the record before the Magistrate, respondents also contributed nothing of substance at that level.

The Court: How do you feel, Mr. Weiss?

Mr. Weiss [counsel for Mr. Wilson]: I have joined in Mr. Rohana's motion for a mistrial, but I would like Mr. Wilson to speak for himself.

The Court: Mr. Wilson?

Floyd Wilson, Jr.: I am not in agreement with the motion for mistrial. I am pretty sure we have a good jury here, and that precautionary instructions will cure the matter of what happened.

The Court: Well, what is your position, Mr. Weiss?

Mr. Weiss: I had originally joined in with Mr. Rohana's motion, but I must respect my client's wishes. We fully discussed it. And that's his position, as he advised me when we were having the short recess just previous.

The Court: Do you realize, Mr. Wilson, that the danger here is that no matter what we say precautionarily, this jury is almost bound to know that your pictures were in a police file, which indicates a former arrest or conviction; do you know that?

Floyd Wilson, Jr.: Yes, sir.

The Court: And you are willing to waive that danger? It really amounts to letting this jury know that you have a prior record. Do you want to run that risk?

Mr. Weiss: Can we confer, your Honor?

Floyd Wilson, Jr.: Yes, sir, I understand.

The Court: Are you willing to run the risk?

Floyd Wilson, Jr.: Yes, sir.

The Court: Do you have anything to say, Mr. Johnson?

Mr. Johnson [counsel for the Commonwealth]: Mr. Wilson indicates on the record he does not believe there is any error or if there is error, that's not manifested.

The Court: No, he didn't say that. He is taking the position that there is error, but he waives any rights he has under it. And he persists after having been fully warned by the Court as to what he is waiving and the danger he is running.

Mr. Johnson: And basically, Mr. Wilson can speak from both sides of his mouth. If he is convicted, on the appellate level he can argue an unintelligent failure to move for mistrial.

The Court: He can't do that because he could argue it, but there would be no basis for that. He knows exactly what he is doing.

Mr. Johnson: But the question on the appeal would be whether he appreciates the consequences in the event he is not convicted. Then the matter is moot, which puts us in the Rule 1118B. of the Rules of Criminal Procedure, which provides the trial judge with the right to declare a mistrial *sua sponte.*

I would say that the law in the field is that whatever the defendant wants, the defendant should have. The defendant's wishes are of paramount consideration except if those wishes just are prima facie, studpid.

The Court: Well, without necessarily accepting your nomenclature, we feel that under all of the conditions here, in the interest of justice and fairness and regardless of the waiver, we should grant a new trial. And we so order that to start 10:00 o'clock tomorrow morning before a brand new panel of jurors, entirely new. Now, I want this panel brought in. And in the presence of these two defendants and their lawyers, I am going to give them instructions.

*Commonwealth v. Floyd Wilson,* No. 5122, N.T. at 4–7 (March 29, 1976).

A second trial on the same charges was held before Judge John Reilly in May, 1976, and the jury returned a verdict of guilty on all counts. Mr. Wilson appealed this conviction, raising the same double jeopardy claims asserted in the present petition, to the Pennsylvania Superior Court, which affirmed the conviction. *Commonwealth v. Wilson,* 257 Pa.Super. 329, 390 A.2d 847 (1978). The Pennsylvania Supreme Court denied Mr. Wilson's application for allocatur and this petition followed.

## II.

The heart of Mr. Wilson's claim here is the contention that the Commonwealth can-

not demonstrate on the basis of the trial record that there was a "manifest necessity," *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), for Judge Diggins' decision to declare a mistrial and that, therefore, the Commonwealth's requirement that he stand trial a second time violated the double jeopardy clause.

■ It is well settled that a state may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). This rule prohibits absolutely a retrial following an acquittal. However, "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Arizona v. Washington, supra,* 434 U.S. at 505, 98 S.Ct. at 830. When faced with such a situation, a reviewing court must satisfy itself that the termination of the initial criminal proceeding pursuant to a mistrial order was justified by a "high degree" of necessity if a retrial is to be permitted. *Id.* at 506, 98 S.Ct. at 830.

■ It is also clear that since the defendant's "valued right [secured by the double jeopardy clause] to have his trial completed by a particular tribunal," *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), is abridged by a trial judge's declaration of a mistrial, the trial court is under an obligation to "temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S. 470, 486 (1971). Accordingly, a reviewing court must be assured that the trial court exercised "sound discretion" in deciding to declare a mistrial. *See United States v. Perez, supra,* 22 U.S. (9 Wheat.) at 580; *Arizona v. Washington, supra,* 434 U.S. at 514, 98 S.Ct. at 834.

The issues raised in Mr. Wilson's petition have proven difficult for courts to resolve. Recognizing this, the Supreme Court has stated that no single, mechanical rule can be formulated to judge the propriety of mistrial orders across the wide range of trial problems which may prompt a decision to abort a trial. *See Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1972). Nevertheless, as the Court explained in *Arizona v. Washington, supra,* 434 U.S. at 507, 98 S.Ct. at 831, a reviewing court's judgment about the propriety of a given mistrial order may be made more—or less—easily depending upon the particular situation which led to the decision. At one end of the spectrum are cases in which granting a mistrial provides some tactical advantage to the prosecution or stems from prosecutorial or judicial misconduct. In such cases, mistrial is clearly not a necessary step and the decision to declare a mistrial under such circumstances represents an abuse of the trial court's discretion which would bar a retrial. At the other extreme are cases where the trial judge considers the jury to be deadlocked and orders a mistrial. Here, the trial court's decision is generally considered necessary and is upheld as a sound exercise of discretion. *See generally Arizona v. Washington, supra,* 434 U.S. at 507–09, 98 S.Ct. at 831.

Of course, the most troubling issues are presented by the set of cases which fall between these two poles. A common example of this intermediate category is the situation in which the trial is interrupted by the illness of an important witness or by some other exigency. In this situation, courts have generally held that a short continuance is the preferred alternative to a mistrial, and a retrial following the declaration of a mistrial under such circumstances is therefore barred. *See, e.g., United States v. McKoy,* 591 F.2d 218, 221–23 (3rd Cir. 1979); *Harris v. Young,* 607 F.2d 1081, 1085–86 (4th Cir. 1979); *Dunkerley v. Hogan,* 579 F.2d 141, 146–48 (2d Cir.), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1978).

A variant situation—one raising perhaps the closest questions and the most troubling considerations—is that in which the trial court is unexpectedly faced with some clearly improper and prejudicial event in the course of the trial and must decide whether to grant a mistrial or to attempt

some less drastic cure. It was this kind of trial problem that the Court examined in *Arizona v. Washington, supra.* There, the state trial judge declared a mistrial because of highly inappropriate aspersions on the prosecution made by defense counsel during his opening statement. The Court noted that in such circumstances the trial judge is in the best position to assess the extent of prejudice, its impact on the jury and the likelihood that such a taint can be satisfactorily cured by cautionary instructions. *Id.* 434 U.S. at 513–14, 98 S.Ct. at 834. Because these considerations favor appellate deference to the trial court's judgments, the Court held that the trial court's decision in such situations is entitled to "special respect." *Id.* at 510, 98 S.Ct. at 832. Applying that standard, the Court found that the trial judge's order had been proper and that retrial of the defendant did not violate the double jeopardy clause.

■ In my view, Mr. Wilson's first trial presented precisely the type of difficult situation discussed in *Arizona v. Washington, supra,* and, accordingly, in considering Mr. Wilson's petition, the decision by Judge Diggins to declare a mistrial must be accorded special deference. As the record makes clear, Judge Diggins was concerned—despite Mr. Wilson's proffered waiver—that cautionary instructions would not adequately protect the defendant from the prejudicial testimony concerning "mug shots." Considering that the trial judge was in the best position to assess the impact of this testimony on the jury; that the testimony presented a significant risk of prejudicing the outcome of Mr. Wilson's trial; and that the trial had apparently just gotten under way, Judge Diggins appears to have soundly exercised his discretion.[2]

Moreover, as the Court made clear in *Arizona v. Washington, supra,* 434 U.S. at 516–17, 98 S.Ct. at 835–836, the Constitution does not mandate that a state trial court make explicit findings or explain on the record why alternatives to mistrial were not pursued, provided that the record, read as a whole, provides a sufficient justification for the ruling. The colloquy, quoted above, between Judge Diggins, Mr. Wilson, and counsel, reveals (a) the serious nature of the trial problem faced by Judge Diggins; (b) Judge Diggins' consideration of the less drastic alternative of cautionary instructions; and (c) his conclusion that ordering a mistrial was necessary and fair. Considering these circumstances in light of the principles announced in *Arizona v. Washington,* Judge Diggins' decision represents a sound exercise of discretion.[3]

Accordingly, I will deny Mr. Wilson's petition for a writ of habeas corpus.

**2.** The trial judge may also have been concerned that since the mistrial motion of Mr. Wilson's co-defendant had already been granted, it would further prejudice Mr. Wilson for the jury to see his co-defendant depart from the case leaving Mr. Wilson alone to confront the Commonwealth's charges.

**3.** Relying on the Second Circuit's decision in *United States v. Grasso,* 552 F.2d 46 (2d Cir. 1977), the Magistrate concluded that Judge Diggins should have explained on the record, in substantially greater detail than is to be found in the chambers colloquy, why it would not have been feasible to give appropriate cautionary instructions, thus obviating a mistrial. But *Grasso* was vacated and remanded by the Supreme Court, 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1114 (1978), for further consideration in the light of *Arizona v. Washington, supra.* On reconsideration, the Second Circuit rejected its earlier ruling that explicit findings were required and concluded that a second trial was not barred. 600 F.2d 342 (1979).