UNITED STATES of America,
Plaintiff–Appellee,

v.

Forrest Vincent CROTWELL,
Defendant–Appellant.

No. 88–1799.

United States Court of Appeals,
Tenth Circuit.

Feb. 12, 1990.

Susan L. Foreman, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the briefs), for defendant-appellant.

Susan Pennington, Asst. U.S. Atty., Tulsa, Okl. (Tony M. Graham, U.S. Atty., and Kenneth P. Snoke, Asst. U.S. Atty., Tulsa, Okl., on the brief), for plaintiff-appellee.

Before BALDOCK and EBEL, Circuit Judges, and CONWAY, District Judge.*

EBEL, Circuit Judge.

This case presents the issue of whether the retrial and conviction of defendant-appellant Forrest Vincent Crotwell, after a mistrial had been declared over Crotwell's objection, violated the Double Jeopardy Clause of the Fifth Amendment. Because we believe that the mistrial was not a "manifest necessity," we reverse Crotwell's convictions on grounds of double jeopardy.

### Facts

On May 5, 1987, a federal grand jury returned an indictment charging Crotwell and codefendant James Carrel Luman with one count of receipt and possession of goods stolen from an interstate shipment, in violation of 18 U.S.C. § 659. On December 1, 1987, a superseding indictment was returned charging defendant with one count of conspiracy, in violation of 18

---

* The Honorable John E. Conway, of the United States District Court for the District of New Mexico, sitting by designation.

U.S.C. § 371, three counts of receipt and possession of goods stolen from an interstate shipment, in violation of 18 U.S.C. § 659, and one count of receipt and possession of goods that had crossed a state boundary after having been stolen, in violation of 18 U.S.C. § 2315.

A jury trial began on or about February 29, 1988. On March 3, 1988, during the third day of the evidentiary portion of the trial, Loren Bocook, a government witness, suggested during the course of direct examination that Luman had been visiting a parole officer.[1] The government had not solicited the remark. See R.Vol. III at 3–4. However, the remark improperly exposed the jury to Luman's prior criminal history, and on March 3, just after Bocook made the improper remark, Luman's counsel requested a mistrial. Crotwell's counsel later joined in the motion for a mistrial. He noted that he would confer with his client, but he also stated that he did not "want to try this case again." R.2d Supp.Vol. I at 62. The government requested the trial judge to give a cautionary instruction to the jury in lieu of declaring a mistrial. Id.

Later that same day, the trial judge held a hearing on the mistrial request. At that hearing, counsel for Crotwell took a different position and stated that he was in fact opposed to a mistrial and that the court should consider severing the case so that the trial could continue as to Crotwell.[2] The trial judge rejected the idea of severing the case and ordered a mistrial as to both defendants, stating that "from the standpoint of judicial economy that is the only way to proceed." R.Vol. III at 7.

The retrial began on March 7, 1988, four days after the court declared a mistrial. Just prior to the selection of the jury for the retrial, counsel for Luman moved to dismiss the action based on double jeopardy and also moved for permission to question Loren Bocook before he testified in order to determine why he made the remark on March 3 that led to the earlier mistrial. Luman's counsel further moved for permission to question other government witnesses before they testified. The trial judge granted the motion to question Bocook and denied the double jeopardy motion and the motion to question other government witnesses. Counsel for Crotwell then stated that he wanted the record to reflect that he joined in the motions made by Luman's counsel. Motion Hearing, March 7, 1988, at 9.

The trial concluded on March 23, 1988, and the jury found Crotwell guilty of all counts. On May 4, 1988, the trial judge sentenced Crotwell to a prison term of five years for the conspiracy count and to terms of ten years each for the other four counts, with each of the latter terms to run concurrently with each other, but consecutively to the five-year sentence for conspiracy. Crotwell filed his notice of appeal to this court on May 16, 1988. On appeal, Crotwell argues that the trial court improperly denied the double jeopardy motion.[3]

1. Bocook testified as follows:
   Q. [Government:] Tell us what happened in connection with that subject [concerning a federal grand jury that was meeting on or about March 3, 1987] on that day?
   A. [Mr. Bocook:] Well, we was just mainly riding around and Jimmy [Luman] was upset and he said that he had to come down and see the parole officer that day.
   R.2d Supp.Vol. I at 60–61.

2. At the hearing, Crotwell's counsel stated:
   I do not want a mistrial, I mean, I just absolutely don't. But on the other hand I can second guess myself later on in having withdrawn the motion and allowing this thing to proceed. I would request a severance and ask the Court to allow this matter to proceed as far as Mr. Crotwell is concerned. That is one of my potential thoughts on the matter. I

don't know what the Court's reaction to that might be.
R.Vol. III at 4.

3. Crotwell also argues on appeal that: (1) the trial court erred in permitting the government to refer to evidence involving certain property (microwave ovens and Tucker Ware plastic products) that allegedly was stolen and in the possession of the defendants; (2) the trial court erred in allowing the government to introduce, for impeachment purposes, evidence of a prior conviction of Crotwell that was more than ten years old; and (3) the trial court erred in denying Crotwell's motion for a judgment of acquittal as to Count Three of the indictment, which charged defendant with the receipt and possession of specified amounts of canned dog food, canned cat food, and hot cocoa that allegedly were stolen from an interstate shipment, in vio-

## Discussion

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The primary purposes of the Double Jeopardy Clause are: (1) to ensure the finality of judgments in criminal cases; (2) to minimize the defendant's exposure to the expense and emotional stress that a criminal proceeding entails; (3) to ensure that the government is not given an unfair opportunity to reformulate its case in light of what it learned during the first trial about the strengths of the defense and the weaknesses of its own case; (4) to protect the defendant's right to have his fate determined by the jury that was first empaneled and sworn; and (5) to ensure that multiple punishments are not imposed for the same offense. *See United States v. DiFrancesco,* 449 U.S. 117, 127–29, 101 S.Ct. 426, 432–33, 66 L.Ed.2d 328 (1980); *see also Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). Of those five purposes, only the fourth one, concerning a defendant's right to have his fate determined by the jury first empaneled, is truly implicated in this case.[4]

■ When a mistrial has been declared, the Double Jeopardy Clause precludes a retrial of the defendant unless the defendant consented to the mistrial, *see United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976),[5] or unless the mistrial was compelled by "manifest neces-

sity." *See, e.g., Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *Illinois v. Somerville,* 410 U.S. 458, 462–63, 93 S.Ct. 1066, 1069–70, 35 L.Ed.2d 425 (1973). Although Crotwell initially moved for a mistrial, he withdrew that request at the March 3, 1988 hearing.[6] Therefore, Crotwell did not consent to the mistrial, and the double jeopardy inquiry must proceed under a "manifest necessity" standard. *See United States v. Kwang Fu Peng,* 766 F.2d 82, 85 (2d Cir. 1985); *United States v. Mastrangelo,* 662 F.2d 946, 950 (2d Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982); *United States v. Evers,* 569 F.2d 876, 878 (5th Cir.1978).

The concept of "manifest necessity" was first introduced in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), where the Court allowed a defendant to be retried even though he did not consent to the discharge of the initial jury when it failed to reach a verdict in the first trial. In *Perez,* Justice Story stated for the Court:

> [T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure,

lation of 18 U.S.C. § 659. Because of our ruling on the double jeopardy claim, we do not consider any of these other issues.

4. The concern with preserving the finality of judgments is not implicated here because no final judgment had been reached in Crotwell's previous trial. The concern with minimizing exposure to the stress and expense of criminal proceedings is involved to a certain extent here because the mistrial did delay the completion of the prosecution of defendant. However, in light of the fact that the previous trial was interrupted soon after it had begun and the fact that the retrial began just four days after the trial judge had declared the earlier mistrial, the interest in minimizing stress and expense was only slightly infringed. For those same reasons, there is no

basis for concluding that the government gained an unfair tactical advantage as a result of the mistrial. In addition, because Crotwell's first trial did not result in a conviction, Crotwell's retrial and ultimate conviction did not result in his suffering multiple punishments for the same offense.

5. However, if a prosecutorial or judicial impropriety gives rise to a defendant's successful motion for a mistrial and that impropriety was intended to provoke the defendant to file the motion, the Double Jeopardy Clause bars a retrial. *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).

6. *See* footnote 2, *supra.*

the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes....

*Id.*

The Supreme Court has held that a mistrial need not be necessary in the most absolute sense of that term in order to satisfy the "manifest necessity" standard. *Arizona v. Washington,* 434 U.S. at 506, 511, 98 S.Ct. at 831, 833. However, a " 'high degree' " of necessity is required before a court can conclude that a mistrial is proper. *Id.* at 506, 98 S.Ct. at 830. Manifest necessity has been found to exist where a jury is unable to reach an impartial verdict because of improper and highly prejudicial remarks made by counsel during opening argument, *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), and where there is a procedural defect in the indictment that would require automatic reversal of any conviction obtained. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

The degree of appellate scrutiny given to a trial judge's finding of manifest necessity will vary depending on the underlying facts. At one end of the continuum, a trial judge's finding of manifest necessity is entitled to the "highest degree of respect" when juror bias or a hung jury is involved. *Arizona v. Washington,* 434 U.S. at 510–11, 98 S.Ct. at 832–33. At the other end of the continuum, the "strictest" appellate scrutiny is appropriate when the finding of manifest necessity is premised on "the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or achieve a tactical advantage over the accused." *Id.* at 508, 98 S.Ct. at 831 (footnotes omitted). In any event, an appellate court in all cases must ensure that the trial judge exercised " 'sound discretion' " in making his finding of manifest necessity. *Id.* at 514, 98 S.Ct. at 835 (quoting *United States v. Perez,* 22 U.S. (9 Wheat.) at 580).

■ Here, the trial judge apparently denied Crotwell's severance request and granted the mistrial solely on the basis of his concern for judicial economy, and not on the basis of any perceived prejudicial effect on Crotwell of continuing the trial.[7] The trial judge made no statements explicitly indicating concern about any prejudicial effect on Crotwell if the trial were to have continued as to him alone. Moreover, Loren Bocook's improper testimony related solely to Crotwell's codefendant, and the improper comment was only a very brief reference to the codefendant's visit to a parole officer. *Cf. United States v. Calabrese,* 645 F.2d 1379, 1385 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390, 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981) (noting that "[t]he unsavory reputation and prior convictions of co-defendants" are not sufficiently prejudicial to a defendant to entitle him to a severance).

The interest in conserving judicial resources does not outweigh Crotwell's "valued right" to have his trial completed by the first jury that was empaneled and sworn. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). There is no indication that the jury in the previous trial would have been unable to reach an impartial verdict as to Crotwell, and there was no fatal defect in the pro-

---

7. The trial judge stated that "from the standpoint of judicial economy," a mistrial was "the only way to proceed," R.Vol. III at 7. He did later state that he knew "of no other solution" and that if he "were to rule otherwise ... it would be clear error." R.Vol. III at 9. However, it is impossible to determine whether, in making those later remarks, the judge was at all referring to the potential prejudicial impact on Crotwell (in addition to the more obvious prejudicial impact on Luman) of continuing the trial. In light of the trial judge's clear statement of the need for a mistrial "from the standpoint of judicial economy," and in light of the absence of anything in the record that could support a finding of substantial prejudice as to Crotwell, we must conclude that the trial judge's refusal of the request for a severance was based solely on grounds of judicial economy. If the trial judge did believe that he had no option other than to declare a mistrial as to Crotwell, he was in error. The jury could have been instructed to disregard the remark, which was "vague and passing in nature," *United States v. Taylor,* 605 F.2d 1177, 1179 (10th Cir.1979), and the trial of Crotwell could have resumed.

ceedings that would have required automatic reversal of any conviction of Crotwell that might have been obtained. In the absence of either of those or similarly compelling circumstances, concerns about judicial economy cannot form the basis for a finding of manifest necessity. *See United States v. Ramirez*, 884 F.2d 1524, 1530 (1st Cir.1989) ("In light of the double jeopardy bar hanging over the case, the cost to the government of two trials was not a compelling reason for denying severance"); *United States v. Bridewell*, 664 F.2d 1050, 1051 (6th Cir.1981) (per curiam) ("While we sympathize with [the trial judge's] laudable desire to avoid a waste of federal court resources, we do not think that the possible necessity of a separate trial constitutes manifest necessity for purposes of avoiding a double jeopardy bar").

The trial judge did hold a hearing in order to provide the parties with an opportunity to suggest alternative solutions to the problem created by Loren Bocook's testimony, and the trial court considered the suggested alternative of severance. *Cf. United States v. Jorn*, 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971) (plurality opinion) (noting, in the course of concluding that there was an absence of manifest necessity, that trial court did not consider alternatives to mistrial and did not provide an opportunity for the parties to suggest alternatives); *Brady v. Samaha*, 667 F.2d 224, 229–30 (1st Cir.1981) (same). However, those facts alone are not enough to support a conclusion that the trial judge exercised the "sound discretion" that was required of him. Although we recognize that the trial judge need not make an explicit finding of manifest necessity, *see Arizona v. Washington*, 434 U.S. at 516–17, 98 S.Ct. at 835–36, at the same time we cannot affirm a mistrial declaration, entered over a defendant's objection, on the basis of "guess and conjecture," *United States v. Rich*, 589 F.2d 1025, 1032 (10th Cir.1978), any more than we can affirm such a mistrial declaration when a trial judge has based his ruling on an improper consideration. Nothing in the record suggests that a mistrial as to Crotwell was appropriate to ensure an impartial jury. Indeed, counsel for Crotwell suggested the less drastic remedy of granting a severance and continuing the trial as to Crotwell, and the government acknowledged that severance was an adequate alternative, although not a preferred one because of the inconvenience of having to present similar evidence in two trials. *See* R.Vol. III at 5–6.

In sum, we conclude that the mistrial declared as to Crotwell was not a manifest necessity. Therefore, we REVERSE the May 4, 1988 judgment of the district court and we REMAND the case to the district court with instructions to vacate the judgment.