930 F.2d 35
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tony P. DURAN, Defendant-Appellant.
 No. 90-2001.
 United States Court of Appeals, Tenth Circuit.
 March 15, 1991.
 
 Before STEPHEN H. ANDERSON, SETH and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Circuit Judge.
 
 
 1
 Defendant Duran brings this appeal from an order of the district court denying defendant's motion to dismiss the charges against him on double jeopardy grounds. Duran contends that the magistrate's decision to halt the first trial so Duran could obtain counsel should have been characterized as a mistrial not a continuance. Duran argues that to obtain effective assistance of counsel sufficient to satisfy the Sixth Amendment and permit imprisonment, a new trial is required. And, because jeopardy attached in the initial trial when the government's first witness began to testify, a second trial which could potentially result in a more severe sentence, is prejudicial and barred by double jeopardy.
 
 
 2
 We agree with Duran that a prison sentence can only be imposed if Duran's appointed counsel is allowed to represent Duran from the beginning of the proceedings. We also agree with Duran that a second trial would be barred by double jeopardy. However, for the reasons that follow, we reverse the district court and remand to the magistrate with instructions to continue the initial trial as a petty offense case with no possibility of imprisonment.
 
 
 3
 On May 13, 1989, security police at Kirtland Air Force Base in Albuquerque, New Mexico issued five citations charging Duran with petty offenses under the Assimilative Crimes Act, 18 U.S.C. Sec. 13. The charges were for driving while under the influence of alcohol, driving while license suspended or revoked, resisting or obstructing an officer, assault of a police officer, and trespassing. The trespassing charge was dismissed on the government's motion.
 
 
 4
 On July 3, 1989, Duran, acting without the assistance of counsel, signed a Consent to Proceed before United States Magistrate in a Petty Offense Case. The form signed by Duran states:
 
 
 5
 "The United States magistrate has explained to me the nature of the offense(s) with which I am charged and the maximum possible penalties which might be imposed if I am found guilty. The magistrate has informed me of my right to the assistance of legal counsel."
 
 
 6
 By signing the form, Duran waived his right to trial, judgment, and sentencing before a United States district judge.
 
 
 7
 Duran's trial began on August 8, 1989. Duran, appearing without an attorney, was told by the judge to "have a seat over there and then I'll explain things to you as we go along." The government's first witness, security officer Troy Lindsey, was sworn in and testified. Lindsey testified that he stopped Duran for running the entrance gate to the Air Force base and issued traffic citations because Duran did not have a driver's license or proof of insurance. The driving under the influence of alcohol, assault, and obstructing an officer charges were issued when Duran became uncooperative after failing three field sobriety tests performed by Lindsey. Duran sat through this testimony without making objections. The magistrate never asked Duran if he wanted counsel or if he was knowingly and voluntarily waiving his right to counsel.
 
 
 8
 Only after the prosecution completed Lindsey's direct testimony did the magistrate question Duran's pro se representation. The judge told Duran he had some "misgivings" about Duran representing himself and asked Duran if he had considered hiring a lawyer. When Duran responded affirmatively the judge stated:
 
 
 9
 "Because with what I'm looking at here, I'm rather firmly of the opinion that you need one [an attorney], unless you're going to be spending quite a bit of time over here in Albuquerque as--as our guest.... I don't want to put you at some unreasonable disadvantage and I don't mind continuing this hearing if I have the assurance that you would appear with counsel....
 
 
 10
 .............................................................
 
 
 11
 ...................
 
 
 12
 * * *
 
 
 13
 "... I don't want to frustrate the Government, but I'm going to continue this--continue this matter, and I may have you run through your examination of this witness again when it's reset, because with what I'm looking at, it's not simply a minor traffic offense, it's a pattern of conduct that as long as I'm acting as an official of the Government or of the State you're in difficulty, if you're convicted of it."
 
 
 14
 After the case was continued, the magistrate entered an order establishing the defendant's financial inability to retain counsel and that the defendant had not waived the appointment of counsel.
 
 
 15
 Counsel was appointed and she filed a motion to dismiss the case on double jeopardy grounds. The magistrate denied the motion. Duran then filed an interlocutory appeal to the district court pursuant to Rule 7A of the Rules of Procedure for the Trial of Misdemeanors before United States Magistrates [Magistrate Rules]. The district court affirmed the magistrate's order finding that the magistrate's action was a continuance not a mistrial or in the alternative was justified by "manifest necessity." This appeal followed.
 
 
 16
 Because the denial of a motion to dismiss based on a claim of double jeopardy is a final order, Abney v. United States, 431 U.S. 651, we have jurisdiction to review Duran's appeal under 28 U.S.C. Sec. 1291. Our review begins with the Magistrate Rules. Tracking the Supreme Court's holdings in Argersinger v. Hamlin, 407 U.S. 25, and Scott v. Illinois, 440 U.S. 367, Rule 1(b) states that "the Federal Rules of Criminal Procedure govern all proceedings except those concerning petty offenses for which no sentence of imprisonment will be imposed." When imprisonment is a possibility "[e]very defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent that defendant at every stage of the proceedings ...." Fed.R.Crim.P. 44 (emphasis added). Absent a knowing and intelligent waiver, this right to counsel applies to crimes "whether classified as petty, misdemeanor, or felony." Argersinger, 407 U.S. at 37.
 
 
 17
 The critical factor in determining if the appointment of counsel is required is whether a jail sentence will be imposed by the magistrate. This determination does not stem from the potential sentence available under law. See Magistrate Rule 1(c). Rather, prior to the commencement of a trial, the magistrate must review the case to determine if a prison sentence is a realistic possibility given the particular circumstances of the case. If a jail sentence appears warranted, counsel must be appointed or a knowing and voluntary waiver of counsel obtained. If the magistrate is unclear as to whether a jail sentence is needed, counsel must be appointed to preserve imprisonment as a sentencing option. See Notes of Advisory Committee on Magistrate Rule 1(c). As the Supreme Court stated in Argersinger:
 
 
 18
 "[E]very judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He [the judge] will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts."
 
 
 19
 Argersinger, 407 U.S. at 40.
 
 
 20
 From the record it is apparent that the magistrate either did not measure the seriousness of the offenses before beginning the trial or failed to obtain a knowing and voluntary waiver of counsel. The magistrate determined after the trial began, and a witness had testified, that "with what I'm looking at, it's not simply a minor traffic offense, it's a pattern of conduct...." This should have been made before the trial commenced. Because no counsel had been appointed Duran's trial commenced as a petty offense trial with no possibility of imprisonment. Duran's previous patterns of conduct could have been considered at sentencing, but not be used to order a jail sentence. The magistrate thus sought, after the trial started, to reinstate imprisonment as a sentencing option by continuing the trial and appointing counsel. The appointment of counsel before the trial started would, of course, not have changed the nature of the offenses charged, but the magistrate would then have had the option of incarcerating Duran for his continuing "pattern of conduct" if he was found guilty.
 
 
 21
 The district court upheld the magistrate's use of a "continuance" to appoint counsel stating that "[t]he United States Magistrate recognized that it was not only in the defendant's best interest to be represented by counsel, but also his constitutional right under the Sixth Amendment." United States v. Duran, No. 89-347 JP (D.N.M.).
 
 
 22
 Although we agree with the district court that it was in Duran's best interest to have counsel, the Sixth Amendment does not automatically require appointment of counsel for a petty offense. Under Scott v. Illinois, 440 U.S. 367, 373, the Sixth Amendment draws a line at incarceration. "[T]he central premise of Argersinger--that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment--is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." Scott, 440 U.S. at 373. Cases, like Duran's, which proceed with a pro se defendant who has not waived his right to counsel, are constitutional if the defendant is not sent to jail. Duran's case, therefore, can continue with or without appointment of counsel provided no prison sentence is ultimately imposed.
 
 
 23
 At the stage in Duran's trial when this appeal was taken, imprisonment was no longer a sentencing option. The failure to appoint counsel or obtain a valid waiver of counsel before the trial began cannot be cured by the magistrate's order even if the appointed counsel follows the magistrate's suggestion and listens to the tape of the government's first witness. Duran's newly appointed counsel correctly notes that much of the damaging evidence introduced through the government's first witness may well have been suppressed through pre-trial motions or objections during the trial. This appears to be a real consideration.
 
 
 24
 Duran correctly notes that jeopardy attached in the first trial when the first prosecution witness was sworn in and began to testify. Serfass v. United States, 420 U.S. 377, 388. Starting Duran's trial over, therefore, would invoke the double jeopardy clause unless Duran consented to the magistrate's decision to do so.
 
 
 25
 As we recently reiterated, the concept of "manifest necessity" permits retrial of an accused when "the ends of public justice would otherwise be defeated." United States v. Crotwell, 896 F.2d 437, 439 (10th Cir.) (quoting United States v. Perez, 22 U.S. (9 Wheat.) 579, 580). The district court concluded that the trial court's action was "manifestly necessary because appearing pro se without a proper waiver of the right to counsel could not be corrected during the remainder of the trial." Duran at 5 (citing Illinois v. Somerville, 410 U.S. 458). We cannot reach such a conclusion.
 
 
 26
 We agree with the district court that a conviction resulting in a jail sentence, obtained while Duran appeared pro se, would be reversed. However, in our view, a retrial under these facts cannot be justified by "manifest necessity." The doctrine is applicable only in urgent circumstances and with the greatest caution. United States v. Perez, 22 U.S. (9 Wheat.) 579; United States v. Crotwell, 896 F.2d 437 (10th Cir.). Therefore, we conclude that a "second" trial in Duran's case, as ordered by the magistrate, would be barred by the double jeopardy clause.
 
 
 27
 The magistrate erroneously sought to start a new trial with the possibility of imprisonment with the newly appointed attorney reading a transcript or hearing a tape of the first witness' testimony. The magistrate thus assumed that the consequences of a mistrial should be applied with a start of another trial. This, as we have indicated, could not be done. Instead, the trial should proceed, in the form it was originally commenced, from the point it was stopped by the magistrate granting the continuance. The sentencing option of incarceration has been removed as a matter of law.
 
 
 28
 We remand the case with instructions to continue the initial trial as it began--as a petty offense case with no possibility of imprisonment.
 
 
 29
 Accordingly, the judgment of the district court is REVERSED and the case is REMANDED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3