**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KENNETH DEAN AUSTIN,

Petitioner - Appellant,

v.

HOWARD RAY, Warden, Jackie
Brannon Correctional Center and
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

Respondents - Appellees.

No. 97-6029
(D.C. No. CIV-96-1470-R)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before **BRORBY**, **EBEL** and **KELLY**, Circuit Judges.

Petitioner Kenneth Dean Austin ("Austin") appeals the district court's

denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Supp.

1997). Specifically, Austin claims that his retrial and conviction in Oklahoma

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, *res judicata*,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

state court for Lewd Molestation, after a mistrial had been declared over Austin's objection, violated the Double Jeopardy Clause of the Fifth Amendment. Because we believe that the mistrial was a "manifest necessity," we affirm the district court.

## BACKGROUND

On August 8, 1995, Austin was convicted of Lewd Molestation of his 13-year old stepdaughter in the District Court of Stephens County, Oklahoma. (Aplt. App. at 20 -- Magistrate's Recommendation -- Uncontroverted). See 21 Okla. Stat. Ann. tit. 21, § 1123 (West Supp. 1997). Austin is currently serving a 5-year sentence of imprisonment for that conviction. (App. 20) Austin's conviction was obtained after an earlier trial resulted in a mistrial.

In the earlier trial, the State presented the testimony of the victim, Mandy Austin ("Mandy") concerning the sexual abuse she had endured. During his cross-examination of Mandy, defense counsel elicited testimony concerning her displeasure with certain restrictions Austin and the victim's mother had placed on her. (App. 22). Specifically, Mandy was upset that her television viewing and telephone use were limited, that she was not allowed to see certain friends, and that she was not allowed to wear makeup or the clothes she desired to wear. (App. 22). Defense counsel also elicited from Mandy a denial to the question of

whether she had informed her friend Casey Groves that she had "figured a way to get out of her parents' house." (App. 22 quoting Partial Trial Transcript, at 68).

After the state rested, defense counsel presented Casey Groves for the purpose of eliciting that Mandy had in fact informed Groves that "she had figured a way to get out of her parents' house." (App. 23). The prosecutor objected in advance to any testimony by Groves as to hearsay matters that went beyond inconsistent statements by Mandy. (App. 23). Defense counsel assured the trial judge that he would limit his questioning to the issue of Mandy's inconsistent statement. The trial judge ruled that he would allow Groves to testify "[i]f you just leave it to that." (App. 23, quoting transcript).

During direct examination, Groves testified that Mandy had informed him that she had figured a way to get out of her parents' house. (App. 2-3 -- Partial Trial Transcript). On cross-examination, the prosecutor asked Groves whether the victim had said the same thing when she was staying in foster care with the Alsobrooks in response to Grove's request that she sneak out with him.[1] (App. 4). Groves denied requesting that Mandy sneak out with him. (App. 4). During re-direct examination, defense counsel questioned Groves with regard to certain

_____

[1] Mandy was placed in foster care with the Alsobrooks after reporting that Austin had molested her. (App. 23).

- 3 -

statements Mandy made to Groves while she was staying with the Alsobrooks family.

> Q:     Did she tell you why she was unhappy at the Alsobrooks house?
>
> A:     She -- the same reasons that -- that she was unhappy at the Austin house.  Said that they wouldn't let her wear the makeup that she wanted to.
>
> Q:     Did she tell you --
>
> A:     Wear the clothes.
>
> Q:     -- specifically about Mr. Alsobrook?
>
> A:     She said that he was having sex with her.

(App. 4).

At this point, the State objected and moved for a mistrial. (App. 4).  The trial judge sustained the objection and directed the jury to disregard Groves' last statement.  (App. 4).  The judge delayed consideration of the motion for mistrial until after he had an opportunity to conduct a hearing on that issue.  After hearing arguments concerning the State's motion for a mistrial, the trial judge ruled that a mistrial was required because of the prejudice caused by the statement, and because of certain improper actions taken by counsel in the presence of the jury.  (App. 14).  As the trial judge explained:

> Counsel for the Defendant has indicated that he has -- or had told the witness not to make any reference to the statement, and I have no reason to feel otherwise.  My thought at the time however, and in

reviewing the question, the question appeared to be designed to elicit the response that was given. Now, I'm not saying that counsel for the Defendant did that intentionally, but if I were the witness and the question were asked of me, I think that that would be the -- the response that I would have given to the question. The -- one of the major points that we have here, and as counsel for the State is pointing out, we are now into a collateral matter that is a trial within a trial. The questioning of this particular witness was specifically restricted, I thought certainly by Order of the Court, but by agreement of defense counsel as well, to the possible inconsistent statement that had been set up, if you will, or predicated by defense counsel in his questioning of Mandy Austin, so that the statement's existence came as a surprise to the -- to the Court as well as counsel for the State. Defense counsel of course knew of the statement and had told the witness to avoid repeating it. The State was not put on notice of the statement's existence, and I'm not finding fault with the discovery response that's filed by the Defendant, except the discovery response does, as the State has pointed out, indicate that Mr. Groves' testimony was limited . . . to a relationship with the victim and really said nothing about any statements of the nature that we had present. I don't feel that the door was opened for the statement being introduced, and *I do think that there is evident prejudice caused by the statement*.

I want to point out one other matter that occurred during this period of time . . . and that was a confrontation between co-counsel for the Defendant and the State, unfortunately in the presence of the majority of the jury as they were exiting the courtroom. I don't know what was said by the State's representative, because whatever was said, was said in a voice that was quiet enough not to be overheard, but co-counsel for the Defendant used an expletive to the State's attorney with enough vehemence and loud enough that it caused every jury member that I could see to turn and stare in response. That was highly unprofessional. I cannot think that it did anything certainly but prejudice the jury. At this particular point I don't know if they are prejudiced for or against either particular side, but certainly it had an impact and one that should not have occurred. I'm going to go ahead and direct the mistrial in this matter.

(App. 12-14) (emphasis added).

At the second trial, Austin was convicted and sentenced to five years imprisonment and a fine of $10,000.00. (App. 17 -- uncontroverted). This judgment and sentence was affirmed by the Oklahoma Court of Appeals. (App. 17). Austin then filed for a writ of habeas corpus under 28 U.S.C. § 2254 (Supp. 1997) in the United States District Court for the Western District of Oklahoma on the grounds that his retrial and conviction violated the Double Jeopardy Clause of the Fifth Amendment. (App. 32). The district court refused to grant the writ and now Austin appeals. We exercise jurisdiction under 28 U.S.C. § 1291 (1994) and affirm the district court.

**DISCUSSION**

Under the recently amended 28 U.S.C. § 2254 (Supp. 1997),[2] we may grant a habeas petition predicated on legal error only where the state adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (Supp. 1997). In this case,

---

[2] Because Austin filed his habeas petition in the district court on February 3, 1997, we review Austin's petition under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (effective April 24, 1996). See Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997).

Austin claims his retrial and conviction violated the Double Jeopardy Clause of the Fifth Amendment, as interpreted by the Supreme Court.

Under the Double Jeopardy Clause, a state is precluded from putting a defendant in jeopardy twice for the same offense. Benton v. Maryland, 395 U.S. 784, 796 (1969). The Supreme Court has determined that when a mistrial has been declared over the defendant's objection, the Double Jeopardy Clause precludes a retrial unless the earlier mistrial was compelled by "manifest necessity." United States v. Crotwell, 896 F.2d 437, 439 (10th Cir. 1990) (citing Arizona v. Washington, 434 U.S. 497, 505 (1978); Illinois v. Somerville, 410 U.S. 458, 462-63 (1973)). In this case, Austin did not consent to the trial court's declaration of a mistrial, and thus the issue here is whether the mistrial was justified by the requisite "manifest necessity."

Whether a "manifest necessity" exists for a mistrial is a difficult question, but we are not without guidance in our present inquiry. The Supreme Court has explained that there is a "spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny . . . ." Arizona v. Washington, 434 U.S. 497, 510 (1978). At one end of the spectrum "are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence." Id. at 507. In these cases, and in ones where "there is reason to believe that the prosecutor is using the superior resources of the State to harass or

to achieve a tactical advantage over the accused," we apply the "strictest scrutiny." Id. at 508. On the other end of the spectrum are cases in which "the mistrial [is] premised upon the trial judge's belief that the jury is unable to reach a verdict . . ." Id. at 509. In these situations, we "allow[] the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury." Id.

In this case, the trial judge ordered a mistrial because of the potential prejudicial nature of certain testimony and of certain attorney conduct, and there is no suggestion that the mistrial was the result of any strategic conduct on the part of the State. The Supreme Court has explained that "along the spectrum of trial problems which may warrant a mistrial," a mistrial premised on prejudicial remarks "falls in an area where the trial judge's determination is entitled to special respect." Id. at 510. This is because the trial judge

> has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more conversant with the factors relevant to the determination than any reviewing court can possibly be.

Id. at 513-14 (internal quotation omitted). Thus, we "accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by [an] improper comment." Id. at 511.

- 8 -

Nonetheless, our review of the trial court is not nonexistent. In determining whether a trial court has properly granted a mistrial, we "have an obligation to satisfy [our]selves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial." Id. at 514. Thus, where a "trial judge acts irrationally or irresponsibly, his action cannot be condoned." Id. (internal citations and quote marks omitted).

In this case, we believe the trial judge exercised sound discretion in declaring a mistrial. We agree with Austin that a mistrial would not have been warranted if the only disruption of the trial was the eruption of the defense counsel in the presence of the jury. See Glover v. McMackin, 950 F.2d 1236, 1242 (6th Cir. 1991) (a "virtual shouting match among counsel and the bench . . . is in itself insufficient to merit a mistrial") (internal quotation omitted). However, in this case, there was also the elicitation of testimony concerning the victim's past sexual history. It is well recognized that testimony concerning a sex crime victim's past sexual behavior involves the risk of unfair prejudice to the State, and it is in part for this reason that several states, including Oklahoma, have passed rape shield laws restricting the use of such testimony. See Okla. St. tit. 12, § 2412, Legislative History, *as reprinted in* 1 Leo H. Whinery, Oklahoma Evidence, § 2412, at 85 (1994). See also Abdi v. Georgia, 744 F.2d 1500, 1504 (11th Cir. 1984) (noting that "[t]he clear policy of [Georgia's rape] shield law . . .

reflects the judgment of Georgia lawmakers that such evidence is unusually prejudicial"); Graves v. Garraghty, 618 F. Supp. 1348, 1355 (E.D. Va. 1985) (noting that the "legislative reason[s]" for the enactment of Virginia's Rape Shield Statute were to avoid prejudice to the Commonwealth's right to a fair trial and to encourage victims to prosecute rape cases). Accord Donald A. Dripps, Relevant But Prejudicial Exculpatory Evidence: Rationality versus Jury Trial and the Right to Put on a Defense, 69 S. Cal. L. Rev. 1389, 1411 (1996) (explaining that "rape shield laws are based for the most part on the marginal relevance and high potential for prejudice of evidence of prior sexual activity by rape victims").

It is, of course, impossible for us to determine how Austin's first jury reacted to Groves' testimony concerning Mandy's past sexual behavior, and thus we cannot say with certainty that the State was prejudiced by that testimony. However, as we explained above, it is precisely for this reason that we must defer to the trial judge in this case. See Abdi, 744 F.2d at 1504 (holding that the Double Jeopardy Clause did not bar the second trial of a rape defendant where the earlier mistrial was predicated on the violation of the rape shield statute); Graves, 618 F. Supp. at 1355-56 (same). The trial judge in this case

> has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has . . . observed the apparent reaction of the jurors. In short, he is far more conversant with the factors relevant to the determination than any reviewing court can possibly be.

Arizona, 434 U.S. at 514.

Austin relies on United States v. Crotwell, 896 F.2d 437 (10th Cir. 1990), for the proposition that prejudicial remarks do not constitute a manifest necessity for a mistrial, but this reliance is misplaced. In Crotwell, the trial court had declared a mistrial where the defendant was arguably prejudiced by a co-defendant's reference to the defendant's criminal history. Id. at 438. We held that the mistrial was not a manifest necessity after determining that the trial court "apparently denied [the defendant's] severance request and granted the mistrial solely on the basis of his concern for judicial economy, and not on the basis of any perceived prejudicial effect on [the defendant] of continuing the trial." Id. at 440. In this case, the trial judge relied upon the perceived prejudicial effect of Groves' testimony, and thus Crotwell is inapposite. See United States v. Bauman, 887 F.2d 546, 551-52 (5th Cir. 1989) (holding that the Double Jeopardy Clause did not bar a second trial where the trial court declared a mistrial instead of granting a severance after finding the potential for incurable prejudice on the part of the original panel); Wilson v. Patton, 541 F. Supp. 818, 821 (E.D. Pa. 1982) (holding that the Double Jeopardy Clause did not bar a second trial where the trial court declared a mistrial in the first trial because a witness had indirectly referred to the defendant's criminal history), aff'd, 722 F.2d 736 (3d Cir. 1983).

Finally, we believe the trial judge did not act "irrationally or irresponsibly" in granting the State's Motion for a Mistrial in this case. See Arizona, 434 U.S. at 514. The trial judge conducted a hearing before granting the State's motion, at which time the judge heard arguments from both parties as to the propriety of the State's motion. Although conducting a hearing may not be necessary in all cases, see Abdi, 744 F.2d at 1504, the Supreme Court has noted that a trial judge's decision to hold a hearing before declaring a mistrial indicates that the "trial judge acted responsibly and deliberately, and accorded careful consideration to [the Defendant's] interest in having the trial concluded in a single proceeding." Arizona, 434 U.S. at 516. We agree, and believe that the trial judge in this case exercised sound discretion in declaring a mistrial.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's denial of Austin's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Supp. 1997).

The mandate shall issue forthwith.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

- 12 -