**UNITED STATES of America, Appellee,**

v.

**Mike HUANG, John Chu, Paul Park, and Kwan Yue Cheoi, Defendants–Appellants.**

**Nos. 1166–1169, Dockets 92–1035 through 92–1038.**

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1992.

Decided April 3, 1992.

J. Gilmore Childers, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Daniel C. Richman, Asst. U.S. Atty., on the brief), for appellee.

Sandy Hom, New York City, submitted a brief for defendant-appellant Mike Huang.

David H. Weiss, New York City, for defendant-appellant John Chu.

Abraham L. Clott, New York City (Leonard F. Joy, The Legal Aid Soc., Federal Defender Services Appeals Unit, on the brief), for defendant-appellant Paul Park.

Austin V. Campriello, New York City, (Michael D. Mabry, Werner & Kennedy, on the brief), for defendant-appellant Kwan Yue Cheoi.

Before: VAN GRAAFEILAND, KEARSE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Mike Huang, John Chu, Paul Park, and Kwan Yue Cheoi appeal from an order of the United States District Court for the Southern District of New York,

Robert P. Patterson, Jr., *Judge*, entered upon declaration of a mistrial, denying their motions to bar retrial and dismiss the indictment against them on the ground that a retrial would violate their rights under the Double Jeopardy Clause of the Constitution. The district court declared the mistrial upon the motions of Huang and Chu and over the objections of Park and Cheoi, on the ground that one of the translators at trial was not a properly certified interpreter under the federal Court Interpreters Act, 28 U.S.C. §§ 1827, 1828 (1988). On appeal, Park and Cheoi contend that there was no need for a mistrial and that, having objected to the mistrial, they may not be retried without violation of their rights to be free of double jeopardy. Huang and Chu contend that, notwithstanding their motions for mistrial, they should not be retried because the need for the mistrial was created by the court and the government. For the reasons below, we affirm the denial of the double jeopardy motions of Huang and Chu, and we reverse the denial of the motions of Park and Cheoi.

## I. BACKGROUND

In October 1991, defendants were charged with, *inter alia,* conspiracy to kidnap one Chen Han Ying ("Chen"), in violation of 18 U.S.C. § 1201(c) (1988); kidnaping Chen, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 (1988); and interstate travel in aid of racketeering, in violation of 18 U.S.C. §§ 1952 and 2 (1988). Trial commenced in January 1992; the presentation of evidence began on January 15. Chen was the government's first witness.

On direct examination, Chen testified that on September 25, 1991, he had been forcibly abducted from his home in New Jersey and held for ransom by a group of armed men that included Huang, Chu, and Cheoi. Chen was taken to an apartment in New York City, where he was repeatedly beaten by several men, including Chu, Park, and Cheoi. Chen testified that he was also cut with a knife, burned with red-hot metal, and threatened with a snake. He eventually succumbed to defendants' ransom demands and arranged for $12,000

to be paid. His captivity ended two days after his abduction, when law enforcement agents rescued him and arrested defendants.

On cross-examination, Chen was forcefully challenged by counsel for all four defendants, who attacked, *inter alia,* his identification of defendants and various details of his direct testimony. They sought to impeach him with statements he had made before a New York State grand jury and statements he had made in a pretrial identification hearing held in the present case.

In connection with the prosecution, each of the defendants had requested and received the services of an interpreter. Huang's primary language was the Fu-Zhao dialect of Chinese; Chu and Park spoke Korean; and Cheoi's primary language was the Cantonese dialect of Chinese. Chen testified in the Mandarin dialect of Chinese, and most of his testimony was translated at trial by Laura Ho, a per diem employee of the United States Attorney's office who had been certified by the Southern District Court Interpreters Office as qualified to interpret court proceedings. On January 23, the government arranged for one Arthur Kwok to substitute occasionally for Ho. Kwok, who had been an interpreter in the New York State court system for some three years, had not been certified by the Court Interpreters Office as qualified to interpret in federal court. Kwok shared with Ho the translation duties during the latter part of the cross-examination of Chen, which ended on Friday afternoon, January 24.

At the start of proceedings on Monday, January 27, the trial court announced that it had received a call from the Court Interpreters Office, reporting that as to portions of Chen's cross-examination, Kwok had been summarizing, rather than giving a verbatim translation. Huang and Chu promptly moved for a mistrial:

MR. WEISS [Attorney for Chu]: Mr. Chu's application is for a mistrial. I don't know any way that we can restore his right to an accurate confrontation with the witness. If we put the witness back on the stand and try to confront

him with what he testified to earlier he can always say it was the interpreter that was wrong. I think it's tainted the proceeding.

THE COURT: Rest of you join in that?

MR. HOM [Attorney for Huang]: I do.

. . . .

MR. WEISS: Judge, I just want to add to what my thinking is so the record is clear. Our strategy, to a great extent, relied on the witness' prior statements to the grand jury in debriefing, . . . and the witness claimed that's not what he said. So now we have the jurors alerted that there are, in fact, problems with translators which further impairs his defense. . . .

(Trial Transcript ("Tr.") 719–21.) Park and Cheoi initially did not join the mistrial motion:

MR. CAMPRIELLO [Attorney for Cheoi]: Your Honor, Mr. Choi [*sic*] and I have elected to proceed and not to join in this motion. However, I don't want there to be any indication to this jury that there's any problem whatsoever with these interpreters for the reason Mr. Weiss just articulated. That's the testimony, I have to live with it, the government has to live with it, the jury has to live with it.

MR. JOY [Attorney for Park]: It is also Mr. Park's wish to continue under the same conditions, that no mention be made to the jury as to what problems there are or aren't in the translation.

(Tr. 721.) Upon learning that not only had the interpreter limited his translations of long answers to summaries, but that the interpreter was an employee not of the court but of the United States Attorney's office, Cheoi's attorney took the position that Cheoi was entitled to a mistrial on that dual basis; but he stated that his motion was a conditional one for a mistrial "with jeopardy attached. And if the court is not going to give me jeopardy, I don't want the mistrial. But I think I'm entitled to a mistrial and a mistrial with jeopardy." (Tr. 723.) Cheoi's attorney explained his position as follows:

MR. CAMPRIELLO: . . . .

. . . .

. . . . We did not know, we had no reason to know, we had no reason to inquire, we had no reason to do anything. And then we find ourselves in this pickle, and I don't think this trial can go better for my client the second time around because Mr. Chen now has been subjected to extensive cross-examination. He knows exactly how we're going to handle him. He knows exactly where the problems are. We will never have another kind of what I perceive as a misidentification we had in the courtroom two weeks ago. . . .

The case can't go better for my client. And through no fault of his own, we've been put in this position. So I want a mistrial only with jeopardy attached on the dual grounds that have been articulated focusing, in large measure, on the fact that the government put an interpreter in here without our knowledge. If I can't have jeopardy, I don't want the mistrial. But I want the mistrial with jeopardy.

(Tr. 723–24.) Park promptly joined that position.

The court asked the interpreters who were present in the courtroom and had been there during Kwok's translations whether, in their views, Kwok had been careful in interpreting and whether he had been summarizing rather than translating word for word. Ho responded that as to "[c]ertain parts when the answer was very long, I thought that the interpretation should be more detailed. At times, he sort of digested and summarized, but most of the main points were touched upon." (Tr. 728.) Another translator stated, "When the witness testified in short sentences, I think he did a very good job. But when he talked in a few sentences, I know for a fact that he summarized." (*Id.*) A third translator stated, "Your Honor, I join in what the others have said. I only want to add that there were certain sections where, certain rounds when he was on when he was almost flawless and then there was one round, I remember specifically, that he was summarizing." (Tr. 728–29.)

The Assistant United States Attorney ("AUSA") indicated that the government had not known when it hired Kwok that he had not been certified by the Court Interpreters Office. The government took the position that there had been substantial compliance with the Court Interpreters Act ("Act") and that Kwok's performance had not been deficient:

MR. CHILDERS [AUSA]: Your Honor, having looked at a couple of cases, it's the government's position that there was substantial compliance with the [A]ct, and that there has not been—

. . . .

[*United States v. Gomez*, 908 F.2d 809 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 699, 112 L.Ed.2d 689 (1991)] talks about the interpreter's act and it talks about the preference for word-for-word translation, but it also talks about minor deviations from that, does not create an infirmity.

. . . .

THE COURT:—I'm not sure, no one has any evidence that anyone's rights have been actually affected. But no one has any assurance that they haven't been.

. . . .

MR. CHILDERS: Your Honor, I think the court interpreters, who have put something on the record, have stated that his interpretations for the most part were flawless.

THE COURT: On the short answers. And he did not give a complete answer on long answers.

(Tr. 742–44.)

The district court decided to declare a mistrial and to deny the double jeopardy motions:

THE COURT: . . . .

Now, the difficulty I have is that the defendants were not aware, as the court was not aware, that this man was not a certified interpreter. And, accordingly, the court did not give them the opportunity to ask for electronic monitoring or anything else, to check on this man's interpretations, and so that any corrections could be made for the record.

And under those circumstances, I think that we've got a defect in the criminal trial. And I am going to grant the motion for mistrial across the board for all four defendants, even though two of them haven't done it, unless the defendants want to withdraw their motion.

I don't happen to think that there was a matter that was material, but it does seem to me that they are entitled to that right. Under the law, it speaks mandatori[ ]ly, the section uses the word shall, and under those circumstances the court is going to grant the motion for mistrial and grant it across the board. But not one which would prevent a retrial, and we'll proceed to retrial.

(Tr. 752–53.) The court recognized that, in light of the denial of their jeopardy motions, Park and Cheoi objected to the mistrial:

MR. JOY: Well, your Honor, with regard to Mr. Campriello's client and mine, we don't want—

THE COURT: But I think—

MR. JOY:—We wouldn't want a mistrial.

THE COURT: You may not, but I believe it is a defect because to the—the court proceeding under the law, and under those circumstances, I think it would be—you would be retrying this case at a later time, and I am going to grant the motion across the board. It would be a waste of this court's time to go ahead, and the witnesses' time, and the jury's time to go ahead at this stage with that kind of a defect in the record.

MR. JOY: Would your Honor note in the record, then, that you are granting the mistrial as to Mr. Park and Mr. Choi [*sic*] over the objection of their defense counsel?

THE COURT: Yes.

(Tr. 753.)

The court ordered that jury selection for the retrial begin on January 28. Defendants requested a delay to permit them to appeal the court's denial of their motions to preclude retrial on double jeopardy grounds. The district court denied their requests.

Defendants promptly appealed and asked a panel of this Court to stay the scheduled retrial. On January 28, 1992, this Court granted the stay as to Park and Cheoi, but denied it as to Huang and Chu. The district court elected to delay the retrial as to Huang and Chu pending the decision of this expedited appeal.

## II. DISCUSSION

On appeal, defendants pursue their contentions that retrial of the charges against them will violate their rights under the Double Jeopardy Clause. For the reasons below, we affirm the denial of the motions of Huang and Chu, and we reverse the denial of the motions of Park and Cheoi.

### A. *Huang and Chu*

Huang and Chu contend that they may not be retried because the mistrial was necessitated by judicial negligence and because, now that Chen and the government are aware of the thrust of their defenses, Huang and Chu will suffer undue prejudice to their rights under the Confrontation and Due Process Clauses if they are retried. We reject their contentions.

■ It is of course well established that the Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from successive prosecutions for the same offense. *See, e.g., Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). Where the original trial has not been completed and the defendant himself or herself has moved for or consented to a mistrial, however, a retrial is normally not barred. *See, e.g., United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); *United States v. Rivera,* 802 F.2d 593 (2d Cir. 1986). "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion). The reason for allowing a retrial in such

circumstances is that "[w]hen the defendant requests a mistrial, he is deemed to have deliberately elected 'to forgo his valued right to have his guilt or innocence determined before the first trier of fact.' " *United States v. Rivera,* 802 F.2d at 597 (quoting *United States v. Scott,* 437 U.S. at 93, 98 S.Ct. at 2195). Thus, the Double Jeopardy Clause guards against government oppression; it does not relieve a defendant of the consequences of his voluntary choice to accept a mistrial.

■ There is, however, an exception to this general principle. "Since one of the principal threads making up the protection embodied in the Double Jeopardy Clause is the right of the defendant to have his trial completed before the first jury empaneled to try him," *Oregon v. Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088, the fact that the defendant consented to the mistrial does not deprive him of double jeopardy protection if the mistrial was occasioned by conduct of the trial judge or the prosecutor that was "intended to provoke the defendant into moving for a mistrial," *id.* at 679, 102 S.Ct. at 2091; *see United States v. Rivera,* 802 F.2d at 599. The applicability of this exception turns squarely on the judge's or prosecutor's intent. Negligence, even if gross, is insufficient. *See Mitchell v. Smith,* 633 F.2d 1009, 1012–13 (2d Cir. 1980), *cert. denied,* 449 U.S. 1088, 101 S.Ct. 879, 66 L.Ed.2d 814 (1981). "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial" is the defendant who has moved for a mistrial protected from retrial by the Double Jeopardy Clause. *Oregon v. Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2089.

■ In the present case, upon learning that Kwok had summarized some of Chen's cross-examination answers, Huang and Chu moved for a mistrial. Though they subsequently asked that the mistrial be granted with prejudice on double jeopardy grounds, they persisted in their mistrial motion even after the court stated that it would grant the mistrial only without prejudice to retrial and gave them an opportu-

nity to withdraw their mistrial motions. Accordingly, Huang and Chu are bound by their election to seek a mistrial unless the mistrial motion was intentionally provoked by the government or the court.

There is no indication in the record that the court or the government acted with intent to provoke defendants into moving for a mistrial in the present case. The court apparently had no role in the selection of Kwok as an interpreter. The AUSA indicated that the government was unaware that Kwok had not been certified by the Court Interpreters Office, and there is no suggestion that the government was aware of the fact that Kwok was summarizing rather than translating word for word. Nor is there any indication that the government, which argued strongly against a mistrial in the district court, had any desire not to have the original trial go forward.

Accordingly, insofar as Huang and Chu are concerned, retrial will not violate their rights under the Double Jeopardy Clause. Though they argue that the defense will be less effective the second time around, that is simply one of the " 'harm[s] which always accompan[y] retrial,' " *United States v. Kwang Fu Peng,* 766 F.2d 82, 88 (2d Cir.1985) (quoting *Arizona v. Washington,* 434 U.S. 497, 516 n. 35, 98 S.Ct. 824, 835 n. 35, 54 L.Ed.2d 717 (1978)).

### B. *Park and Cheoi*

Park and Cheoi, on the other hand, are in an entirely different posture because they objected to the declaration of a mistrial without an order barring retrial. When informed that the court would deny the latter, they reaffirmed that they preferred to proceed with the original trial and that they objected to a mistrial. In all the circumstances of this case, we agree with their contention that principles of double jeopardy bar their retrial.

■ In general when there has been a judicial or prosecutorial error during the trial that could warrant a mistrial, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz,* 424 U.S. at 609, 96 S.Ct. at 1080. Therefore, when a mistrial has been declared without the defendant's consent, double jeopardy precludes retrial unless there was " 'manifest necessity' " to declare the mistrial. *United States v. Jorn,* 400 U.S. at 481, 91 S.Ct. at 555 (quoting *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)); *see also United States v. Kwang Fu Peng,* 766 F.2d at 85 ("manifest necessity" standard also applies when defendant's mistrial motion was withdrawn prior to order declaring mistrial). When the defendant has not consented, the trial judge " 'must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.' " *Arizona v. Washington,* 434 U.S. at 514, 98 S.Ct. at 834 (quoting *United States v. Jorn,* 400 U.S. at 486, 91 S.Ct. at 557).

■ Under the manifest necessity standard, "the prosecution bears the 'heavy' burden of showing a mistrial to have been demanded by a 'high degree' of necessity." *United States v. Kwang Fu Peng,* 766 F.2d at 85 (quoting *Arizona v. Washington,* 434 U.S. at 505–06, 98 S.Ct. at 830–31). The reviewing court must satisfy itself that the trial judge, in declaring a mistrial, exercised "sound discretion," *id.* at 514, 98 S.Ct. at 834, and that the " 'defendant's valued right to have his trial completed by a particular tribunal' " was properly " 'subordinated to the public's interest in fair trials designed to end in just judgments,' " *United States v. Jorn,* 400 U.S. at 480, 91 S.Ct. at 554 (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). In sum, "manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United*

*States v. Jorn,* 400 U.S. at 485, 91 S.Ct. at 557.

▬ The test as to what circumstances will constitute manifest necessity is not susceptible to a mechanical formulation; each case must be evaluated on its own facts and circumstances. *See Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). A hung jury is the most common example of circumstances in which the need for a mistrial is manifest. *Oregon v. Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2087; *United States v. Perez,* 22 U.S. (9 Wheat.) at 580, 6 L.Ed. 165. Manifest necessity for a mistrial may also be found where an error has occurred that "would make reversal on appeal a certainty, [since] it would not serve 'the ends of public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court." *Illinois v. Somerville,* 410 U.S. at 464, 93 S.Ct. at 1070. In analyzing whether the error would make reversal on appeal a certainty, however, the court must take cognizance of the fact that if the defendant, alerted to the error, rejects the trial court's offer of a mistrial or withdraws a prior motion for a mistrial, he normally waives his right to raise on appeal the defect that prompted the mistrial offer. *See United States v. Friedman,* 854 F.2d 535, 580 (2d Cir.1988) (defendant's considered decision not to seek a mistrial on basis of trial judge's comment "constitutes a waiver of any claim that he was prejudiced by [that] comment"), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989). Thus, unless the court is persuaded that the trial error has created such a fundamental injustice as to constitute plain error, and therefore is reviewable despite the defendant's apparent waiver, the court should not conclude that reversal is a certainty or that a mistrial is therefore necessary.

In the present case, the district court declared the mistrial on the ground that the use of Kwok, violating the Court Interpreters Act because he was uncertified, presented a sufficient defect to preclude continuation of the trial, apparently in the belief that going forward with the trial could only have resulted in reversal of any convictions obtained. The court stated that the Act "speaks mandatori[ ]ly, the section uses the word shall." Its findings and conclusions, however, did not fully explore the Act or properly apply the "manifest necessity" test.

▬ The Court Interpreters Act requires that interpreters used in proceedings instituted by the United States be certified or otherwise qualified. *See* 28 U.S.C. § 1827(d)(1). Its provisions are designed to insure the quality of interpretations. *See, e.g., id.* § 1827(b)(2); *United States v. Villegas,* 899 F.2d 1324, 1348 (2d Cir.) ("Implicit in [the qualification] requirement is the notion that the interpreter should be competent to render accurate translations."), *cert. denied,* — U.S. —, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990). Nonetheless, though the Act speaks in mandatory terms as to the duty of the court to establish an interpreter program to protect the rights of a defendant whose only or primary language is other than English, it does not preclude a defendant from waiving his right, for example, to receive translation services, *see, e.g.,* 28 U.S.C. § 1827(f)(1) (after consultation with counsel and with leave of the court, "[a]ny individual other than a witness who is entitled to interpretation under subsection (d) of this section may waive such interpretation in whole or in part"); nor does it preclude him from waiving any objection he may have to the certification or performance of a translator for a witness.

▬ As a substantive matter, the Act generally requires "continuous word for word translation." *United States v. Joshi,* 896 F.2d 1303, 1309 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990); *see also* H.R. No. 1687, 95th Cong., 2d Sess. 7–8, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4652, 4658–59 (committee prefers "consecutive" translation mode over "summary mode"). The giving of summaries rather than word-for-word translation is not, however, plain error, and deviations from the ideal do not

automatically require reversal. *See, e.g.,* *United States v. Joshi,* 896 F.2d at 1309; *Valladares v. United States,* 871 F.2d 1564, 1565–66 (11th Cir.1989). Objections to the adequacy of translation may be waived, *United States v. Villegas,* 899 F.2d at 1348, and the ultimate question is whether the translator's performance has rendered the trial fundamentally unfair, *United States v. Joshi,* 896 F.2d at 1309; *Valladares v. United States,* 871 F.2d at 1566.

■ The district court's discussion of the need for a mistrial on account of the violation of the Act was more pertinent to Huang and Chu than to Park and Cheoi. The court stated that defendants had the right to have the witness's testimony translated by a certified interpreter; but it did not analyze the permissibility of their waiver of that right on the advice of counsel. The court did not give any indication that there was a sound ground on which it could properly reject the informed choice by Park and Cheoi to waive those rights in the present case, nor is any such ground apparent from the record. The certified interpreters who had been present at trial were laudatory with respect to Kwok's translation of short answers; and though they stated that he had summarized longer answers, not one of these interpreters suggested that the summaries themselves contained any inaccuracies. Ho stated that Kwok's summaries touched on most of the main points, and the court itself concluded, "I don't happen to think that there was a matter that was material." Hence, it is highly unlikely that there could have been a reversal of any convictions of Park and Cheoi on the ground that continuation of the trial constituted plain error.

Certainly there is no question that Park and Cheoi, through their attorneys, made sufficient attempts to waive their rights to object to the non-certified interpreter and non-verbatim translation. Offered the mistrial, they sought to avoid it, with Cheoi's counsel recounting points scored by the defense at trial and expressing the view that "[t]he case can't go better for my client." Confronted with the probability that Kwok had summarized rather than translating word for word, Park and Cheoi sought to waive any objection, with Cheoi's counsel urging that any question as to the translation simply not be argued to the jury and stating, "[t]hat's the testimony, I have to live with it...." We have no doubt that had the trial proceeded as to Park and Cheoi and resulted in convictions, and had they then attempted to assert rights under the Act on appeal, we would have ruled their arguments waived. Though the court concluded that it should grant the mistrial motions of Huang and Chu, the obvious alternative to a mistrial as to Park and Cheoi was simply to sever the cases and continue with the trial of Park and Cheoi. In light of the waiver attempts of Park and Cheoi, the circumstances did not lend themselves to a finding that a declaration of mistrial over their objections was manifestly necessary.

We do not mean to suggest that a defendant who waived his own objection to a translation that was materially deficient could thereby force the continuation of the trial to the prejudice of the government and the public. If the translation were materially flawed and there were no reasonable alternative cure, the court could reasonably conclude that a mistrial was required in the interests of justice. Here, however, no one pointed to any substantive inaccuracy in the translation, and the government took the position that there had been "substantial compliance with the [A]ct," and that for the most part Kwok's interpretations were "flawless."

In sum, the circumstances of the present case did not suggest that the use and performance of Kwok rendered the trial fundamentally unfair to Park and Cheoi, or would provide any ground for reversal of convictions of Park and Cheoi if obtained, or were sufficient to override the rights of those defendants to have their trial completed by "a tribunal [they] might believe to be favorably disposed to [their] fate." We are unable to conclude that the district court exercised sound discretion in declaring the mistrial as to Park and Cheoi over the objections of Park, Cheoi, and the government, on account of an error that

even the court considered not to be material.

## CONCLUSION

The district court's denial of the motion for an order barring retrial on double jeopardy grounds is affirmed as to Huang and Chu and is reversed as to Park and Cheoi. The matter is remanded for dismissal of the indictment against Park and Cheoi.