UNITED STATES of America,
Plaintiff–Appellee,

v.

Manuel Lazaro CHICA and Ineldo Leo
Ramos, Defendants–Appellants.

No. 93–4560.

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1994.

Kathleen J. Cooper and Howard M. Srebnick, Asst. Federal Public Defenders, Miami, FL, for Chica.

Vincent J. Flynn, Coconut Grove, FL, for Ramos.

Roberto Martinez, U.S. Atty., Jose Bonau, Linda Collins Hertz, and Anne Ruth Schultz, Asst. U.S. Attys., Miami, FL, for plaintiff-appellee.

Before CARNES, Circuit Judge, and FAY * and JOHNSON, Senior Circuit Judges.

CARNES, Circuit Judge:

## I. INTRODUCTION

Following the declaration of a mistrial over their objections, Manuel Lazaro Chica and Ineldo Leo Ramos moved to dismiss the indictment against them on double jeopardy grounds. They appeal the district court's denial of their motions. Because we hold that the declaration of the mistrial was not based on "manifest necessity," we reverse the district court's denial of the motions to dismiss the indictment.

---

\* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. On February 28, 1993, the eve of trial, four ATF Agents were killed when they tried to arrest cult leader David Koresh at the Branch Davidian

## II. BACKGROUND

The appellants, Manuel Chica and Leo Ramos, along with two codefendants, Israel Ramos, Jr., and Jesus Fernandez, were indicted for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Leo Ramos and Chica were also charged with use of a firearm in connection with the drug trafficking offense, in violation of 18 U.S.C. § 924(c)(2). A joint trial was scheduled for all four defendants.

On March 1, 1993, before a jury was sworn, the prosecutor informed the court that the case agent from the Bureau of Alcohol, Tobacco, and Firearms (ATF), had been ordered to Waco, Texas, immediately.[1] According to the prosecutor, in this case the agent was "to testify to the firearms being taken into custody and to a statement made by Mr. [Leo] Ramos." Counsel for each of the four codefendants indicated that they would not object to the chain of custody of the weapons, their place of manufacture, or their working condition. As to the statement by Leo Ramos, the prosecutor indicated that he could probably introduce the statement through another witness. The court asked the prosecutor whether he was willing to "let your agent go," to which the prosecutor responded, "I think under the circumstances I will, Your Honor."

Also prior to the swearing of the jury, counsel for appellant Leo Ramos moved for a continuance "based upon the situation in Texas." Counsel argued that, because both cases involved the use of firearms to threaten law enforcement agents, the publicity around the Waco incident might prejudice any jury selected during the pendency of the standoff. The court denied the motion, considering it unlikely that "later on jurors would be more amenable to individuals who point guns and kill law enforcement agents."

After the agent had left for Waco, but before the jury was sworn, counsel for Israel Ramos informed the court that the agent's grand jury testimony, of which counsel had

compound outside Waco. A fifty-one day standoff involving large numbers of federal agents ensued. See Sue Anne Pressley, *Texas Trial Opens for 11 Branch Davidians,* Wash. Post, January 11, 1994, at A3.

just received a copy, contained evidence favorable to his client and that, therefore, he would need the agent as a witness. The court offered to admit the agent's grand jury testimony, but counsel stated a preference for a live witness. Counsel for Jesus Fernandez stated that he too needed the agent to explore certain exculpatory grand jury testimony. Neither of the two appellants in this appeal, Leo Ramos and Chica, expressed any need for the agent. After a lunch recess, counsel for Israel Ramos renewed his request to continue the trial until the agent's return. The court decided to begin the trial and then recess it if necessary to allow the agent to return:

THE COURT: Why don't we do this. We could always begin the trial and recess. . . . I would hope that everyone is praying that this incident in Texas will not last as long as it does. . . . [M]aybe they can resolve it efficiently and he can be right back. And he will be available. And if I did that, then there would be no need for a continuance. Agreed?

MR. KAPLAN [COUNSEL FOR ISRAEL RAMOS]: That is true, Judge, but maybe—

THE COURT: That's the solution. So you won't have to bring in the Grand Jury testimony, because it seems like you prefer having the case agent here. And the government can bring in the case agent before the case is finished. And he would be available to be called, by either the government in rebuttal or by the defense, before the defense ends their case. . . . And by then I would think that you could fly in the agent just for one afternoon. And he can fly back. And that would resolve any issues. In the event that there is an appeal, there would be no issues as to that. Would you agree or disagree with that, Mr. Kaplan?

MR. KAPLAN: If the Court's schedule in the case was to accommodate the presence of the agent, I would agree with that.

THE COURT: Done.

\*    \*    \*

THE COURT: He will be here before the jury has a verdict in order for the defense counsel to call him. Do you agree [to] that, Mr. Bonau?

MR. BONAU [PROSECUTOR]: I will make every effort to get him here.

THE COURT: If not, this case will be in recess until that happens.

MR. BONAU: To begin with?

THE COURT: No. We will start; but before the case is over, he will be here [for] the defense to call him as a witness.

The jury was sworn and the trial began. The government's second witness at trial was its confidential informant, Esperanza Padron. To the surprise of all present, including the prosecutor, Padron testified concerning an unrelated drug offense which was inadmissible under a pretrial order. Padron's testimony prejudiced Israel Ramos and Jesus Fernandez, both of whom moved for a mistrial. Neither of the two appellants before this Court were prejudiced by the improper testimony and neither of them joined the motion for a mistrial.

The court granted Israel Ramos' motion and tentatively denied Jesus Fernandez's motion. The court then considered whether to sever Israel Ramos or to declare a mistrial as to the remaining defendants so that all four could be tried together. Both the court and the prosecutor expressed a desire to avoid two separate trials. The court invited the parties to consider the options and any relevant case law and then recessed for the night.

The next morning, the court invited counsel for Leo Ramos and Chica to comment "as to whether you want[ ] to proceed to trial with the remaining defendants or whether it serve[s] the interest of judicial economy to have one trial later on, which, incidentally, of course, would accommodate the case agent, who I assume is still in Waco." The prosecutor requested that "if the Court is going to grant a mistrial, that we have one trial with four defendants and that we would start again as soon as the Court could accommodate us." The court replied, "We might as well wait until the Waco incident is over, don't you agree, if I am going to do that?

That way Mr. Kaplan [counsel for Israel Ramos] would have full cross examination rights of the particular agent." Counsel for Fernandez renewed his motion for a mistrial based on Padron's testimony and the court granted the renewed motion. Counsel for Leo Ramos and Chica, however, expressly requested that the trial proceed before the jury that had already been selected and sworn:

THE COURT: Mr. Flynn, anything you want to say?

MR. FLYNN [COUNSEL FOR LEO RAMOS]: No, Your Honor. I am here ready to go.

THE COURT: Mr. Srebnick.

MR. SREBNICK [COUNSEL FOR CHICA]: Your Honor, we would ask the Court to proceed with this jury. We would oppose any effort to start this all over again.

THE COURT: What's the prejudice to your client?

MR. SREBNICK: I believe we are very satisfied with the jury selected. We started the trial, and we are prepared to go forward now, and we would ask the Court to continue along that path.

MR. FLYNN: I would join in that position, Your Honor.

THE COURT: Even though you moved for a continuance originally?

MR. FLYNN: Yes, Your Honor.

\*    \*    \*

MR. SREBNICK: Your Honor, we did not move for a continuance. We are inclined to proceed.

The court reiterated its desire to try the four codefendants together. The court also noted that the agent who had been called to Waco "would be testifying as to the firearms which implicates particularly Mr. Chica and Mr. [Leo] Ramos, the two who wish to continue in the trial, and perhaps I should have granted a continuance in the first place yesterday." The court concluded that the most appropriate course would be to reset the trial as to all four defendants. The prosecutor suggested the "possibility that we could proceed against the two defendants, Mr. Chica and Mr. Ramos, [Leo] Ramos. That would

eliminate the problem of Mr. Kaplan [counsel for Israel Ramos] having to question the agent because we would have a later trial on that where the agent would be available." Although the prosecutor was willing to proceed with the trial against Leo Ramos and Chica, he was also willing to "go along with" the court's declaration of a mistrial as to all four defendants. The court declared a mistrial as to all four defendants and discharged the jury.

Appellant Chica moved to dismiss the indictment against him on double jeopardy grounds and appellant Leo Ramos followed suit. Both argued that jeopardy had attached when the first jury was sworn and that no sufficient justification existed for declaring a mistrial over their objections. The district court initially denied Chica's motion summarily; later it vacated that order, and entered a new order denying the motion. The new order explained that the decision to declare a mistrial as to Leo Ramos and Chica was "essentially an extension of [the court's] original decision to conduct a joint trial." The order said that the agent's absence was a "factor in the Court's decision," because a mistrial would "accommodate the ATF agent and allow both the prosecution and the defense the benefit of his presence." The court also denied Leo Ramos' motion to dismiss the indictment. Both defendants filed an interlocutory appeal.

## III. STANDARD OF REVIEW

On appeal, the question is whether the district court abused its discretion when it denied the appellants' motions to dismiss the indictment. *See United States v. Bradley,* 905 F.2d 1482, 1489 (11th Cir.1990), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 969, 112 L.Ed.2d 1055 (1991); *United States v. Huang,* 960 F.2d 1128, 1136 (2d Cir.1992).

## IV. DISCUSSION

### A. GENERAL PRINCIPLES OF DOUBLE JEOPARDY

The Fifth Amendment provides that "[n]o person shall ... be subject for the

same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. "[J]eopardy attaches when the jury is empaneled and sworn...." *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978). "[F]rom that point forward, the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." *United States v. Shafer,* 987 F.2d 1054, 1057 (4th Cir.1993) (footnote and citations omitted). The Double Jeopardy Clause grants the criminal defendant a " 'valued right to have his trial completed by a particular tribunal.' " *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)); *accord United States v. Puleo,* 817 F.2d 702, 704 (11th Cir.) (citing *Wade,* 336 U.S. at 689, 69 S.Ct. at 837), *cert. denied,* 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987). The defendant's interest is "a weighty one," *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973), given that a second prosecution:

> increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed.

*Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978) (footnotes omitted). The defendant need not demonstrate any "additional prejudice" to invoke the double jeopardy guarantee. *Somerville,* 410 U.S. at 471, 93 S.Ct. at 1073.

■ In the present case, after the jury had been selected and sworn, and some evidence presented, the district court granted a mistrial over the objections of Leo Ramos and Chica. The Double Jeopardy Clause bars the government from retrying them unless, "taking all the circumstances into consideration, there [was] a manifest necessity for the [mistrial], or the ends of public justice would otherwise [have been] defeated" by continuing the trial. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *accord Jorn,* 400 U.S. at 481, 91 S.Ct. at 555; *Bradley,* 905 F.2d at 1486; *Abdi v. Georgia,* 744 F.2d 1500, 1503 n.4 (11th Cir. 1984), *cert. denied,* 471 U.S. 1006, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985). The manifest necessity concept "is designed to accommodate the defendant's right to have his trial completed by the first competent tribunal with the public's interest in 'fair trials designed to end in just judgments.' " *United States v. Gordy,* 526 F.2d 631, 635 (5th Cir. 1976) (quoting *Wade,* 336 U.S. at 689, 69 S.Ct. at 837).

■ Whether manifest necessity exists is a fact-intensive inquiry, *see Somerville,* 410 U.S. at 461–62, 93 S.Ct. at 1069, and is not "susceptible to a mechanical formulation." *Huang,* 960 F.2d at 1135; *accord Arizona v. Washington,* 434 U.S. at 506 & n. 20, 98 S.Ct. at 830–31 & n. 20; *Somerville,* 410 U.S. at 462, 93 S.Ct. at 1069; *Bradley,* 905 F.2d at 1488. The Supreme Court has held that the word "necessity" is not to be interpreted literally, but "that there are degrees of necessity." *Arizona v. Washington,* 434 U.S. at 506, 98 S.Ct. at 831. However, the Court has also instructed us to "require a high degree" of necessity before we conclude that a mistrial over objection was appropriate. *Id.* To determine if a mistrial was manifestly necessary in a particular case, we review " 'the entire record in the case without limiting [ourselves] to the actual findings of the trial court.' " *Bradley,* 905 F.2d at 1488 (quoting *Abdi,* 744 F.2d at 1503); *accord, Arizona v. Washington,* 434 U.S. at 515, 517, 98 S.Ct. at 835, 836.

When a mistrial is granted over the defendant's objection, the burden of persuasion is clear: "[I]n view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one." 434 U.S. at 505, 98 S.Ct. at 830.

## B. THE GROUNDS FOR THE MISTRIAL

In this case, the government has identified two grounds for the declaration of a mistrial over the objections of Leo Ramos and Chica: the unavailability of the agent as a witness and considerations of judicial economy. Neither ground satisfies the government's heavy burden of justification.

### 1. Unavailability of the Agent

■ The agent witness was no more unavailable when the mistrial was declared than he was the day before when the district court made the decision to proceed to trial without him. The district court had reasoned that the trial could begin without the agent because: "I would think that you could fly in the agent just for one afternoon. And he can fly back. And that would resolve any issues. In the event that there is an appeal, there would be no issues as to that." No one objected to proceeding to trial with that understanding, and nothing about the agent's location or availability changed in the twenty-four hours between the beginning of the trial and the declaration of the mistrial.

Nor was there any change in circumstances that made the agent's testimony more important. Instead, it had become less important. The defendants who had indicated before the trial began that they needed the agent as a witness to explore exculpatory evidence were Jesus Fernandez and Israel Ramos; the mistrial that had been granted as to them removed the need to have the agent at trial for that reason. Both of the remaining defendants, Leo Ramos and Chica, urged the court to proceed with the trial without the agent, as the court had decided to do when it began the trial one day earlier. Neither of the two remaining defendants expressed any need for the agent as a witness, and by objecting to the mistrial they waived any error based on his absence. *See Huang,* 960 F.2d at 1135 ("[I]f the defendant, alerted to the error, rejects the trial court's offer of a mistrial ... he normally waives his right to raise on appeal the defect that prompted the mistrial offer." (citing *United States v. Friedman,* 854 F.2d 535, 580 (2d Cir.1988))).

Thus, there was no need for a mistrial insofar as the defense case was concerned.

The district court did note that the agent "would be testifying as to the firearms which implicates particularly Mr. Chica and Mr. [Leo] Ramos, the two who wish to continue in the trial." This possibility did not constitute sufficient justification for a mistrial for three reasons. First, the defendants had previously stipulated as to all firearms related issues to which the agent was to testify. Second, nothing about the agent's expected testimony had changed from the day before when the court had decided to begin the trial without the agent. Third, the prosecutor did not object to going forward; instead, he indicated his willingness to do so. Thus, there was no need for a mistrial insofar as the prosecution was concerned.

The government has not carried its heavy burden of showing that the unavailability of the witness constituted a manifest necessity to justify granting the mistrial over the objection of the two remaining defendants.

### 2. Concerns of Judicial Economy

■ The government also contends that the declaration of the mistrial was justified on grounds of judicial economy, which does appear to have been the district court's primary motivation. We empathize with the district court's desire to conserve judicial resources by having one trial instead of two, but the Double Jeopardy Clause does not contain a judicial economy exception.

■ Four circuits have held that judicial economy, standing alone, does not support a finding of manifest necessity. *See United States v. Allen,* 984 F.2d 940, 942 (8th Cir. 1993) ("[C]onsiderations of judicial economy cannot support a finding of manifest necessity...."); *United States v. Crotwell,* 896 F.2d 437, 440 (10th Cir.1990) ("The interest in conserving judicial resources does not outweigh Crotwell's 'valued right' to have his trial completed by the first jury that was empaneled and sworn." (citation omitted)); *United States v. Ramirez,* 884 F.2d 1524, 1530 (1st Cir.1989) (holding that the cost of two trials could not justify declaring a mistri-

al instead of granting a severance); *United States v. Bridewell*, 664 F.2d 1050, 1051 (6th Cir.1981) ("While we sympathize with [the district court's] laudable desire to avoid a waste of federal court resources, we do not think that the possible necessity of a separate trial constitutes manifest necessity for purposes of avoiding a double jeopardy bar.").

Factually, the Tenth Circuit's decision in *Crotwell* is on all fours with this case. Crotwell was tried jointly with a codefendant. 896 F.2d at 437–38. At trial, a government witness made an improper remark concerning the codefendant's prior criminal history. *Id.* at 438. Counsel for the codefendant moved for a mistrial. *Id.* Crotwell's counsel opposed a mistrial and requested that the codefendant be severed and that the trial continue as to Crotwell. *Id.* The district court rejected the severance option and ordered a mistrial as to both defendants because " 'from the standpoint of judicial economy that is the only way to proceed.' " *Id.* (citation omitted). The second jury convicted Crotwell, who appealed on the grounds that the second trial violated his double jeopardy rights. *Id.* The record was devoid of any indication that the first jury was incapable of rendering an impartial verdict as to Crotwell. *Id.* at 440. Nor could the Tenth Circuit discern any "fatal defect in the proceedings that would have required automatic reversal of any conviction" of him. *Id.* at 440–41. The *Crotwell* court reasoned that absent these "or similarly compelling circumstances, concerns about judicial economy cannot form the basis for a finding of manifest necessity." *Id.* at 441 (citing *Ramirez*, 884 F.2d at 1530, and *Bridewell*, 664 F.2d at 1051). Likewise, in this case, there was no indication that the jury could not have rendered an impartial verdict as to the two remaining defendants, and there was no fatal defect in the proceedings that would have required automatic reversal of a conviction of them.

We agree with the Tenth Circuit's *Crotwell* decision and with the three other circuits that have reached the same conclusion. The problem of burgeoning dockets is an increasingly serious one, and courts can and should take all appropriate steps to increase efficiency and to conserve judicial resources. But the need for judicial efficiency and economy cannot override the values inherent in specific constitutional guarantees such as the Double Jeopardy Clause. As we observed in *United States v. Gordy*, 526 F.2d 631 (5th Cir.1976), "the determination of manifest necessity for a mistrial depends upon the state of the jury rather than the state of the judge or the court's docket." *Id.* at 632.[2]

### 3. The District Court's Adherence to Procedural Fairness

■ The government emphasizes the fact that the district court considered the matter over night, asked the parties to do the same, and heard from them before declaring the mistrial. The process used by the district court was an eminently fair one, but even the most slavish devotion to procedural safeguards cannot rescue a decision that is wrong on the substance. Under the circumstances of this case, no amount of procedural due process could make the declaration of a mistrial over the objections of Leo Ramos and Chica a sound exercise of the district court's discretion.

## V. CONCLUSION

A grand jury found probable cause to believe that these two appellants committed serious crimes, and they may be guilty. Under our holding they will escape trial and any possibility of conviction. If the guilty go free, that is regrettable. But it would be more regrettable if we were to violate the Constitution's clear prohibition against subjecting these two men, whether innocent or guilty, to the jeopardy of another trial.

**2.** At oral argument, the government suggested that even if neither the agent's absence nor judicial economy taken separately constituted manifest necessity, the two rationales taken together nevertheless justify the district court's declaration of a mistrial over the objections of Leo Ramos and Chica. We disagree. The grounds on which the government relies are insufficient when considered together as well as separately.

The district court's orders denying the appellants' motions to dismiss the indictment are REVERSED.